IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JOSE HENAO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HILTON RESORTS<br>CORPORATIONS dba HILTON<br>GRAND VACATIONS CLUB,<br><br>　　　　Defendant. | CIVIL NO. 17-00476 DKW-RLP<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION TO<br>DISMISS** |

**INTRODUCTION**

Hilton Grand Vacations Company, LLC ("Hilton") seeks dismissal of Plaintiff Jose Henao's employment discrimination and retaliation action on the basis of *res judicata*, or claim preclusion, in light of the Court's recent grant of summary judgment in favor of Hilton in a separate action filed by Henao. In both cases, Henao alleges that Hilton unlawfully terminated or suspended his employment in July 2016 because he complained about age discrimination against "older sales agents." He contends, however, that he was not required to include his present claims for violations of the Age Discrimination in Employment Act ("ADEA"), U.S.C. § 621 *et seq.*, in his earlier case because he had not yet received a Notice of Right To Sue from the Equal Employment Opportunity Commission ("EEOC"), and because his ADEA claims are distinct from his previous cause of action under the

Hawaii Whistleblower Protection Act ("HWPA"), Haw. Rev. Stat. § 378-62. Henao is incorrect. Because the requirements of claim preclusion are met, and Henao offers no compelling reason for failing to bring his present ADEA claims in his prior case, the Court GRANTS Hilton's Motion to Dismiss.

## BACKGROUND

Henao was hired as sales agent for Hilton in 2012, and two of his civil actions arising from his employment there have been assigned to this Court. The Court first outlines the procedural background and factual allegations in the prior case, Civil No. 16-00646 ("First Case"), and the instant case, Civil No. 17-00746 ("Second Case"), in light of Hilton's request to dismiss the Second Case based upon the claim preclusive effect of summary judgment granted to Hilton in the First Case.[1]

---

[1] On November 13, 2017, the present matter was reassigned to this Court pursuant to Local Rule 40.2. Dkt. No. 11 (11/13/17 Order Reassigning Case). Henao has filed other administrative and civil actions against Hilton in connection with his employment, including: (1) *Henao v. Hilton Grand Vacations Company, LLC* ("HGVC"), Department of Labor & Industrial Relations, State of Hawaii, Wage Standards Division Docket No. 011838; (2) *Henao v. HGVC*, Equal Employment Opportunity Commission, EEOC No. 486-2016-00344; (3) *Henao v. HGVC*, Department of Commerce & Consumer Affairs, Regulated Industries Complaint Office, State of Hawaii, Case No. REC 2017-14-L; (4) *Henao v. HGVC*, District Court of the First District (Honolulu Div.), Civil No. 1SC16-1-1531, filed August 9, 2016; (5) *Henao v. HGVC*, District Court of the First District (Honolulu Div.), Civil No. 1SC16-l-2429, filed December 6, 2016; and (6) *Henao v. HGVC*, District Court of the First District (Honolulu Div.), Civil No. lSCl7-1-205, filed February 7, 2017. *See* Decl. of Andrew Pepper ¶¶ 3–4, Dkt. No. 18-3 in Civ. No. 16-00646.

## I. Henao's First Case Against Hilton

On November 2, 2016, Henao filed a Complaint in state court alleging a single count of retaliation in violation of the HWPA based upon his "reports of violations of age discrimination laws and other laws." Compl. ¶ 12, Dkt. No. 1-1 in Civ. No. 16-00646. The Complaint in the First Case alleges that after he complained on April 8, 2016 "to management about unlawful age discrimination because the Director of Sales had been terminating older sales agents and replacing them with younger sales agents," Compl. ¶ 8, and "also complained about management taking sales commission from sales agents to which management was not entitled," Compl. ¶ 9, he "was terminated on July 4, 2016" in retaliation "for complaining about the aforesaid violations of law." Compl. ¶¶ 7, 10.

Hilton removed the case to federal court on December 6, 2016. Notice of Removal, Dkt. No. 1 in Civ. No. 16-00646. According to Hilton, Henao was not terminated on July 4, 2016 or on any other date, remains employed as a sales agent, and is presently listed on Hilton's employee ledger as being out on personal leave status. Decl. of Julia Montenegro ¶ 4; Dkt. No. 18-1 in Civ. No. 16-00646.

By early 2016, Henao complained that Hilton Sales Supervisor, Joshua Kannel, "was discriminating based upon age by firing the older sales agents." Decl. of Jose Henao ¶ 3; Dkt. No. 21-1 in Civ. No. 16-00646. He also complained to both Kannel and Julia Montenegro, a senior Hilton human resources manager, that

3

Hilton's minimum wage recovery draw program "resulted in illegal deductions from [Henao's] pay in violation of law[.]" Henao Decl. ¶ 2. Henao claims that on July 4, 2016, because of his outspoken complaints, he was told by Kannel and Supervisor Bryan Economou to "'pick up [his] personals and go home'. [He] was terminated." Henao Decl. ¶ 4. Henao "asked for clarification and was told 'the termination is final'." Henao Decl. ¶ 5.

Hilton denies that Henao was "terminated" at any time on July 4, 2016 or thereafter. Instead, according to Hilton's Montenegro, "[o]n July 4, 2016, Mr. Henao was advised that he had not met written and objective [sales] performance criteria for his job position and . . . that [Hilton] HR would be contacting him shortly to discuss next steps. Montenegro Decl. ¶ 6.a. On July 6 and July 8, 2016, Hilton received notes from Henao's doctor, and placed him on leave for medical reasons, retroactively from July 1 until July 26, 2016. Montenegro Decl. ¶ 6. Hilton HR "decided not to take any action with regard to Mr. Henao's past poor job performance and to continue [his] employment upon his return from [Family Medical Leave Act ("FMLA")] leave." Montenegro Decl. ¶ 6.e. At his request, Hilton HR met with Henao on July 19, 2016 to discuss his employment status. Montenegro describes the meeting, in part, as follows—

> During that meeting, Mr. Henao stated that he no longer wanted to work for [Hilton] and asked that he be terminated so that he could collect unemployment insurance for the remainder of 2016 (at which time he already was planning to retire). [Hilton] HR

4

> declined to terminate Mr. Henao's employment as requested, informed Mr. Henao that he was on FMLA leave, and showed him his tentative work schedule for his return to work upon the expiration of his FMLA leave. Mr. Henao repeatedly stated that he either deemed himself terminated or wished to be terminated. With equal frequency, [Hilton] HR told Mr. Henao that he was not terminated and that [Hilton] would not be terminating his employment as requested just so he could fraudulently collect unemployment insurance payments.

Montenegro Decl. ¶ 6.g. Henao did not refute Montenegro's account of the meeting in opposition to Hilton's motion for summary judgment.

On July 29, 2016, Henao forwarded to Hilton HR a note from his doctor, dated July 26, 2016, indicating that Henao had, in fact, been released back to work and that he had no illness or disability limiting his ability to work. Montenegro Decl. ¶ 6.k., Ex. B. (7/26/16 Physician Note), Dkt. No. 18-5 in Civ. No. 16-00646. Although Henao was scheduled to work, he did not come to work or call in for the three-day period of August 3, 4, and 5, 2016. Montenegro Decl. ¶ 6.n. Montenegro states that Henao "became terminable after his third 'no call/no show,' [however], [Hilton] HR elected to defer any termination decision and, instead, wrote Mr. Henao a letter in an attempt to engage with [him]." Montenegro Decl. ¶ 6.o.

Because no decision had been made regarding his employment status, Hilton offered to extend Henao's FMLA leave if he qualified or to provide him with non-FMLA leave, as both described in an August 9 letter and as referenced in a prior August 5 communication from Hilton HR—

5

> If you need further FMLA leave, you may remain eligible for such leave and we will be happy to work with you to set up further time off work. Similarly, if you would like to take an non-FMLA leave for up to a month, we will be happy to grant such a request. The key is communication, we cannot figure out how to accommodate your needs if you do not communicate with us and simply fail to show up for work. As we informed you on August 5, 2016 you are free to return to work, free to extend your FMLA leave, or free to take another form of leave. The choice is yours and we will work with you to effectuate your decision.

Montenegro Decl. ¶ 6.p., Ex. C (8/9/16 Letter). Henao did not dispute that he received Montenegro's August 9 letter and that he never contacted Hilton HR to discuss his job status, as requested. *See generally* Henao Decl.; *see also* Ex. D, Henao's Response to First Request for Admissions ¶¶ 33–35, Dkt. No. 18-7 in Civ. No. 16-00646. According to Montenegro, no action has been taken against Henao, and he remains on Hilton's employee ledger on personal leave status. Montenegro Decl. ¶ 6.s.

On August 10, 2016, Henao filed a Charge of Discrimination with the EEOC alleging age discrimination and retaliation by Hilton in violation of the ADEA. Henao Decl. ¶ 8, Ex. 3 (EEOC Charge), Dkt. No. 21-4 in Civ. No. 16-00646. Henao's Charge states that Hilton "did not provide a reason for my termination on July 4, 2016." Ex. 3 at 1 (EEOC Charge).

On June 6, 2017, Hilton moved for summary judgment, asserting that, because he is still employed by Hilton, Henao suffered no adverse employment

action, an essential element of his HWPA claim. The Court held a hearing on Hilton's motion on September 15, 2017, and, on October 6, 2017, issued its Order granting summary judgment ("10/6/17 Order"[2]) and entered judgment in favor of Hilton. Dkt. Nos. 26 and 27 in Civ. No. 16-00646. On November 3, 2017, Henao filed a motion for reconsideration, asking the Court to "modify" its ruling to allow him to amend his complaint so that the case may proceed anew under a previously undisclosed theory of employer liability, and asserting for the first time that "Plaintiff understood the adverse employment action was a termination, however, now it has been found by the Court that the fact is that the adverse employment action was actually a suspension." Dkt. No. 28-1 at 3, in Civ. No. 16-00646. Because Henao's assertions were false, and the motion for reconsideration otherwise lacked merit, the Court denied it on November 6, 2017, stating: "On summary judgment, neither Henao nor Hilton addressed whether Henao had ever been 'suspended' by Hilton. . . . Nowhere in . . . the Court's summary judgment order did the Court address suspension or any concept remotely resembling a suspension." Dkt. No. 29 at 2–3, in Civ. No. 16-00646.

On November 6, 2017, Henao filed a notice of appeal in the First Case. Dkt. No. 30 in Civ. No. 16-00646. That appeal remains pending.

---

[2]The 10/6/17 Order is also available at 2017 WL 4479253 (D. Haw. Oct. 6, 2017).

## II. Henao's Second Case Against Hilton

On September 27, 2017, Henao filed his Complaint against Hilton in the Second Case based upon the same conduct alleged in the First Case. Dkt. No. 1 in Civ. No. 17-00476. On October 20, 2017—after the Court granted Hilton summary judgment in the First Case—Henao file a First Amended Complaint ("FAC"), adding an additional allegation that "Hilton takes the position that Plaintiff was suspended on July 4, 2016 and not terminated." FAC ¶ 15, Dkt. No. 6 in Civ. No. 17-00476. According to Henao, if "not for [his] age, and in retaliation for complaining about the discrimination, [he] would not have been terminated from employment with Defendant Hilton." FAC ¶ 17. The FAC includes two counts for violation of the ADEA: (1) age discrimination (Count I); and (2) retaliation based upon the "actions of [Hilton's] agents and employees in terminating Plaintiff or otherwise discriminating against him because he opposed [discrimination]," (Count II). FAC ¶¶ 20, 25.

Hilton moves to dismiss the Second Case as barred by the doctrine of claim preclusion/*res judicata*.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

"A district court may consider the affirmative defenses of claim or issue preclusion on a Rule 12(b)(6) motion to dismiss." *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1231 n.5 (D. Or. 2013); *Thompson v. Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 2004) (noting that *res judicata* challenges may be considered in a motion to dismiss for failure to state a claim under Rule 12(b)(6)); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (*res judicata* properly raised in motion to dismiss when there are no disputed issues of fact); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (*res judicata* may be sustained on a Rule 12(b)(6) motion when relevant facts are shown by court records); *see also Rainwater v. Banales*, 2008 WL 5233138, at *9 n.6 (C.D. Cal. 2008) (leave to amend may be denied as futile when the claims would be barred by *res judicata* or collateral estoppel).

A court may consider certain documents attached to a complaint, as well as documents incorporated by reference in the complaint, or matters of judicial notice, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003). The Court takes judicial notice of the pleadings, court orders, and other public records attached to the parties' briefs. *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## **DISCUSSION**

Because there is an identity of claims in the two actions, and because Henao concedes there was a final judgment on the merits in the first action and identity or privity between the parties in the two actions, the elements of claim preclusion are satisfied. Accordingly, the Court GRANTS Hilton's Motion to Dismiss.

### **I.** **Legal Standards Governing Claim Preclusion**

When addressing the preclusive effect of a federal court judgment, federal courts apply federal *res judicata* rules. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.").

For *res judicata*, or claim preclusion, to apply, there must be:

> (1) identity of claims; (2) a final judgment on the merits; and (3) the same parties, or privity between the parties. *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010) (amended).

> A court is to apply four criteria to decide whether there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). The fourth criterion is the most important. *Id*. at 1151.

*Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). As to the fourth and most important factor of the "identity of claims" test—whether the separate actions arise from the "same transactional nucleus of facts"—the Ninth Circuit has explained that—

> in most *res judicata* cases, the inquiry about the 'same transactional nucleus of facts' is the same inquiry as whether the claim could have been brought in the previous action. If the harm arose at the same time, then there was no reason why the plaintiff could not have brought the claim in the first action. The plaintiff simply could have added a claim to the complaint. If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action. Either way, the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action. In that context, it makes sense, when asking whether the claims involve the 'same transactional nucleus of facts,' to ask as a proxy whether the claims could have been brought in the original action.

*Liquidators of European Fed. Credit Bank*, 630 F.3d at 1151; *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir.

2003) (*res judicata* "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action. . . . It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.").

Of particular relevance here, the Ninth Circuit recently "confirm[ed] that for purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) (agreeing "that a bright-line rule which asks only whether a claim could have been brought at the time the operative complaint in the prior suit was filed is appropriate").

"The party asserting a claim preclusion argument 'must carry the burden of establishing all necessary elements.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)) (additional citations omitted). For the reasons that follow, Hilton has met that burden here.

## II. This Action Is Barred By Claim Preclusion

Here, there is no dispute that the Court's 10/6/17 Order in favor of Hilton was a final judgment on the merits, or that the parties to each suit are identical. The application of the claim preclusion doctrine, then, hinges on an analysis of whether

there is an identity of claims between Henao's two complaints. Because Henao's suits arise out of "the same transactional nucleus of facts," he cannot avoid the bar of *res judicata* simply by "pleading a new legal theory," *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986), or by relying on his pending EEOC Charge. Each attempt to do so is discussed below.

### A. Identity of Claims: the First Case and Second Case Involve the Same Claims

Henao makes two arguments in an effort to escape the preclusive effect of the Court's 10/6/17 Order: (1) the claims are not the same because the Second Case "is based upon age discrimination" under the ADEA, a theory that was not asserted in the First Case; and (2) his ADEA claims did not come into being until he received the "June 30, 2017 Notice of Right to Sue issued by the [EEOC]," after the complaint in the First Case was filed. Mem. in Opp'n at 5, Dkt. No. 17 in Civ. No. 17-00476. Both contentions fail as a matter of law.

The central criterion in determining whether the prior litigation involved the same claim is "whether the two suits arise out of the same transactional nucleus of facts." *See Frank v. United Airlines*, 216 F.3d 845, 850 (9th Cir. 2000). Here, it is clear they do. Henao's HWPA retaliation claim from the First Case, as well as Henao's ADEA discrimination and retaliation claims from the Second Case arise out of the same "transactional nucleus of facts." This is so because, in both actions, Henao alleges that he was subjected to retaliation for complaining about age

13

discrimination.  In both actions, he claims that sales supervisor Joshua Kannel was the principal Hilton actor responsible for the retaliation.  And in both actions, the retaliation took the form of a July 4, 2016 instruction to pick up his personal items and go home.  *Compare* First Case Compl. ¶¶ 7–10 *with* Second Case FAC ¶¶ 4–17.  To be clear, the gravamen of each case derives from the exact same conduct on the exact same dates by the exact same actors.  That the FAC specifically references age discrimination under the ADEA, while the First Case does not, does not change the complaints' overlap for claim preclusion purposes.[3]

Although Henao attempts to distinguish his state HWPA claim from his federal ADEA claims, the "identity of claims" element "does not mean that an

---

[3] In fact, the Ninth Circuit has rejected this precise argument.  In *Owens v. Kaiser Found. Health Plan, Inc.*, plaintiffs brought multiple actions in federal and state court alleging racial discrimination and hostile work environment under Title VII, and discrimination and harassment under state law.  The Ninth Circuit affirmed the district court's dismissal based on *res judicata*, explaining as follows—

> Both causes of action are predicated on racial discrimination and allege the same circumstances regarding Appellants' terminations.  Although the current action also alleges retaliation and hostile work environment, these are "all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action."  *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998) (holding that *res judicata* bars consideration of a hostile work environment claim that could have been raised in a prior action between the same parties) (internal quotation marks and citation omitted).  As the district court correctly noted, the additional allegations of discrimination are "related to the same set of facts as the allegations in plaintiffs' 1995 complaint for wrongful discharge, and . . . the two cases could have conveniently been tried together."  *See Feminist Women's Health Ctr. v. Codispoti,* 63 F.3d 863, 868 (9th Cir. 1995) (holding that *res judicata* bars subsequent action when the plaintiff "had to produce substantially the same evidence in both suits to sustain its case").

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001).

imaginative attorney may avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated." *Tahoe-Sierra*, 322 F.3d at 1077–78; *See also Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 n.2 (9th Cir. 1982) ("[a]ppellant has apparently confused *res judicata* with the related but distinct doctrine of collateral estoppel, which does apply only when 'an issue is actually and necessarily determined'") (citation omitted). Whether labeled HWPA or ADEA, the claims in the Second Case are undoubtedly "the same general claims adjudicated in" the First Case, and arise out of the same transactional nucleus of facts. *Domingo v. Donohue*, 2014 WL 605485, at *6 (N.D. Cal. Feb. 14, 2014). Whether Henao could have brought his age discrimination claim in his First Case is a separate issue, to which the Court turns next.

Henao maintains that he could not have brought his ADEA claims until after he received the June 30, 2017 right-to-sue letter from the EEOC. The question for the Court's claim preclusion analysis is whether a claim "could have been brought at the time the operative complaint in the prior suit was filed." *Howard*, 871 F.3d at 1040. That is so because "unlike issue preclusion, claim preclusion focuses on what could have been litigated in the prior suit, not what was actually litigated." *In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d 920, 939 (E.D. Cal. 2017).

Henao's argument that he could not have brought his ADEA claim in the First Case because he had yet to receive a right-to-sue letter from the EEOC is deficient

15

for several reasons. First, the ADEA does not mirror the exhaustion requirements of Title VII. Rather, under the ADEA, "[n]o civil action may be commenced by an individual [] until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d). "The statute requires the aggrieved individual to file a charge before filing a lawsuit; it does not condition the individual's right to sue upon the agency taking any action." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 403–04 (2008).[4] Under governing law, then, Henao was permitted to file his civil action within 60 days after filing his Charge on August 10, 2016, and in fact, was not required to wait until receipt of the letter on June 30, 2017. That 60-day period ran on October 9, 2016, which was before Henao filed the First Case, and nearly a year before the Court heard the motion for summary judgment on September 15, 2017. Instead, Henao waited until September 27, 2017 to include his ADEA claim when he filed the Second Case,[5] and has offered no reasoned explanation for doing so.[6]

---

[4]The Supreme Court's opinion includes "a cautionary preface, [noting] that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq*., and the Americans with Disabilities Act of 1990, 104 Stat. 327, as amended, 42 U.S.C. § 12101 *et seq*." *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 393 (2008).

[5]In *Howard*, the Ninth Circuit held that "claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Howard*, 871 F.3d at 1040. Applying the claim-accrual rule, the court determined that the employment claims in Howard I and Howard II were not identical for purposes of claim preclusion analysis—

The remaining three factors relevant to the identity of the claims, also weigh in favor of Hilton. There is no doubt that the same evidence has and would be presented in the two actions, as they are based on the same conduct by the same actors, as described above. *Harris*, 682 F.3d at 1132. The "rights and interests" factor also favors Hilton, which has an obvious interest in avoiding successive litigation over claims arising from the same set of facts, while the public has an

---

> Howard could not have brought retaliation claims in Howard I based on the City's refusal to consider her for the Finance Director position in 2011. Howard filed her initial complaint in Howard I on September 14, 2009, and she filed a second amended complaint on October 26, 2010. She had not yet applied for the Finance Director position at the time of her first or second amended complaints, let alone received the July 6, 2011 rejection letter.
>
> Thus, Howard's retaliation claims in this suit arose from events that occurred after she filed her complaint in Howard I, and they are not barred by claim preclusion.

*Howard*, 871 F.3d 1032 at 1040. *Howard* illustrates why Henao's ADEA claims alleged in the Second Case did not arise from events that occurred after he filed his complaint in the First Case. The ADEA claims are based on the *same* events as those on which the HWPA claims from the First Case were based, not on *subsequent* events, as in *Howard*.

[6]Henao's counsel at no point informed the Court of the receipt of the June 30, 2017 right-to-sue letter during the pendency of the First Case, nor did Henao ever seek to amend his complaint in the First Case prior to the entry of judgment. Counsel had multiple opportunities to apprise the Court of Henao's pending EEOC Charge, the potential need to amend the complaint to add ADEA claims, and to request a stay of the proceedings and thereby preserve additional claims. That is, there were options available to Henao to avoid preclusion and preserve his ADEA claims. Counsel, however, chose not to pursue any of those available options or to take any measures whatsoever to avoid preclusion. Instead, counsel opted to attempt a second bite at the apple. Under well-settled *res judicata* principles, this is not permitted. *See Clifton v. Warnaco, Inc.*, 53 F.3d 1280, 1995 WL 295863, at *6 n.15 (5th Cir. 1995) (per curiam) (affirming dismissal of claims as barred by *res judicata*, rejecting the plaintiff's argument that the claims could not have been brought in the original lawsuit because a right-to-sue letter had not been issued until one month before summary judgment was granted, because, among other reasons, the plaintiff "failed to notify the court of his receipt of a right to sue letter, and instead waited for a ruling on the pending summary judgment motions" then after receiving an adverse judgment, "he sought to play another card . . . one of the tactics that *res judicata* is designed to discourage").

equally strong interest in "avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth.*, 69 F.3d 321, 330 (9th Cir. 1995). Finally, the "infringement of the same rights" factor additionally favors Hilton. Although Ninth Circuit precedents do not offer a great deal of clarification as to how this element should be analyzed, courts generally perform a basic matching exercise. *See, e.g., Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002) (explaining that "rights asserted in the two actions [we]re different" because they involved infringement of different provisions of a contract). The rights allegedly infringed in the First Case and the Second Case are alike—Henao seeks recovery for infringement of his employment rights—to be free from wrongful termination and/or suspension on the basis of his complaints about age discrimination. *Cf. Garity v. APWU Nat'l Labor Org.,* 828 F.3d 848, 855–56 (9th Cir. 2016) (finding the "the claims here do not match[, because] [o]ne complaint sounds in contract, the other in federal anti-discrimination laws and tort").

In sum, all four of the factors point toward an identity of claims. The persuasive opinions reviewed above, and *res judicata* principles generally, compel the conclusion that Henao's claims in the two cases are the same and that Henao could have brought all of these claims in the First Case. Consequently, Hilton has satisfied the identity of claims element of *res judicata*.

### B. The Court's Summary Judgment Ruling in the First Case Constitutes a Final Decision on the Merits

Henao acknowledges that the Court's entry of summary judgment in favor of Hilton in the First Case is a final judgment on the merits. *See* Mem. in Opp'n at 4, Dkt. No. 17 in Civ. No. 17-00476; *see also Hells Canyon Pres. Council v. U.S. Forest Serv.,* 403 F.3d 683, 686–90 (9th Cir. 2005). Further, a district court's judgment is a final judgment for purposes of claim preclusion, even if an appeal is pending on that judgment. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 928 (9th Cir. 2006) ("[I]n federal courts, a district court judgment is 'final' for purposes of *res judicata*. This is so even during the pendency of an appeal.") (citation and quotation marks omitted). Therefore, Hilton has satisfied the second requirement.

### C. The First Case and Second Case Involve the Identical Parties

Henao sued his employer, Hilton, in both the First and Second Cases, which he concedes, satisfies the final *res judicata* element. *See* Mem. in Opp'n at 4–5, Dkt. No. 17 in Civ. No. 17-00476.

### D. All Three Requirements of Claim Preclusion Are Satisfied

Hilton has met its burden to establish (1) an identity of claims in the two actions; (2) a final judgment on the merits in the First Case; and (3) identity between the parties in the two actions. *Res judicata* therefore bars Henao's claims here. To permit Henao to continue to litigate his ADEA claims "would be to permit an absurd waste of judicial resources and to remove any sense of finality from federal court

judgments." *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 506 (S.D.N.Y. 2012), *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013). In short, "[i]f *res judicata* is to have any meaning, it must mean that this action should be dismissed." *Mahmood*, 905 F. Supp. 2d at 506–07.

## CONCLUSION

For the foregoing reasons, Henao's claims in this matter are barred by *res judicata,* and Defendant's Motion to Dismiss is GRANTED. Dkt. No. 13. The Clerk's Office is directed to close the case.

IT IS SO ORDERED.

DATED: February 13, 2018 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Henao v. Hilton Grand Vacations Company, LLC*, CV NO. 17-00476 DKW-RLP; **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**